**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

**Civil Action No. 13-cv-00499-MSK**

**IN RE:   JEFFREY DREW LAVENHAR**

**FIRST AMERICAN TITLE INSURANCE COMPANY,**

 **Appellant,**

**v.**

**JEFFREY DREW LAVENHAR;
JEFFREY L. HILL, Trustee,**

 **Appellees.**

-----------------------
and
-----------------------

**Civil Action No. 13-cv-02160-MSK**

**IN RE:   JEFFREY DREW LAVENHAR**

**LAURIE LAVENHAR,**

 **Appellant,**

**v.**

**FIRST AMERICAN TITLE INSURANCE COMPANY,**

 **Appellee.**

**OPINION AND ORDER AFFIRMING BANKRUPTCY COURT DECISIONS**

 **THIS MATTER** is before the Court on appeal from two orders of the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court") addressing motions for relief from the automatic stay.

In case number 13-cv-00499, First American Title Insurance Company ("First American") appeals from a February 15, 2013 Order and Judgment of the Bankruptcy Court denying its motion for relief from the bankruptcy stay to perfect a lien.

In case number 13-cv-02160, Laurie Lavenhar (the debtor's former wife) appeals from the July 29, 2013 Order and Judgment of the Bankruptcy Court granting First American relief from the stay to intervene in the Lavenhar divorce pending in the District Court for Colorado's Eighteenth Judicial District in Elbert County for the sole purpose of determining whether a fraud was committed upon that court.

In determining this matter, the Court has considered the designated records and the written arguments of the parties, including, in case number 13-cv-00499, Appellant's Opening Brief **(# 9)**, Appellee's Response Brief **(# 10)**, and Appellant's Reply Brief **(# 14)**; and in case number 13-cv-02160, Appellant's Opening Brief **(# 12)**, Appellee's Response Brief **(# 15**, with modified exhibits, **# 16-19)**, and Appellant's Reply Brief **(# 24)**.[1]

## I. Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

## II. Material Facts[2]

In 2010, a dispute between First American and Jeffrey Lavenhar, the facts of which are not directly at issue in the present appeal, was tried in the District Court for Colorado's Eighteenth Judicial District in Arapahoe County. On October 28, 2010, the court issued its findings of fact and conclusions of law in the suit, finding in favor of First American and against

---

[1] The Court is not advised as to the course of the bankruptcy case, and although these are interlocutory appeals, has not been advised that they have become moot.

[2] The Court summarizes pertinent facts here, but elaborates, as necessary, in its analysis.

Mr. Lavenhar. On January 3, 2011[3], that court entered judgment in favor of First American and against Mr. Lavenhar jointly and severally with a limited liability company he had organized in the amount of $434,913.39, plus interest.

During the pendency of the litigation, the Lavenhars sought a divorce in the same court (but presiding in Elbert County). The dissolution decree issued in November 2010 incorporated a separation agreement dated October 26, 2010 that disposed of Mr. Lavenhar's property.

In an attempt to collect upon its judgment, on January 18, 2011 First American recorded a transcript of its judgment; on January 19, 2011 filed suit against Mr. Lavenhar, Ms. Lavenhar and the Laurie H. Lavenhar Living Trust asserting that the transfer of Mr. Lavenhar's interest in 3227 Antelope Ridge Trail in Parker, Colorado (the "Property") to the Laurie H. Lavenhar Living Trust (the "Lavenhar Trust") was a fraudulent conveyance; and filed a notice of lis pendens in Elbert County.

First American also sought to intervene in the Lavenhar's divorce action, seeking, among other remedies, a declaration that the Lavenhars' divorce proceeding was a fraud upon the court designed to hinder First American's ability to collect on its judgment against Mr. Lavenhar. First American asserted that Mr. and Ms. Lavenhar conspired to fraudulently induce the court to take jurisdiction over their marital assets in order to hinder and defraud First American. These conspiratorial actions allegedly included Mr. and Ms. Lavenhar delaying the divorce proceedings until the outcome of the First American trial was known and then backdating the signatures on the separation agreement to make it appear that Mr. Lavenhar signed the document before he knew the outcome. The state court granted First American's motion to intervene.

---

[3] Appeal from the judgment was decided in First American's favor and the case was remanded to the district court, but additional details regarding the case are not necessary to resolution of the present appeal.

On August 25, 2012, before resolution of the fraudulent transfer suit or the complaint in intervention in the divorce proceedings, Mr. Lavenhar filed a voluntary Chapter 7 bankruptcy petition  First American filed two motions for relief from the automatic stay – first, to perfect a judgment lien against the Property, second to pursue its intervention in the divorce action.  The Bankruptcy Court denied the first motion, from which First American appeals.[4]  The Bankruptcy Court granted the second motion, in part, allowing First American to pursue resolution of "the sole issue of whether fraud was committed upon that court."  From this determination, Ms. Lavenhar appeals.[5]

## III.    Analysis

### A.    Standard of Review

"The bankruptcy court's decision whether to grant relief from stay is reviewed for an abuse of discretion."  *Miller v. Deutsche Bank Nat'l Trust Co.* (*In re Miller*), 666 F.3d 1255, 1260 (10th Cir. 2012).  "An abuse of discretion occurs when the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."  *Gray v. English*, 30 F.3d 1319, 1324 (10th Cir. 1994) (quotation omitted).  "A court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling."  *Official Comm. Of Unsecured Creditors v. Harris* (*In re Sw. Food Distribs., LLC*), 561 F.3d 1106, 1111 (10th Cir. 2009) (quotation and alteration omitted).

---

[4]    Mr. and Ms. Lavenhar both joined in the bankruptcy trustee's response brief in 13-cv-00499.

[5]    Mr. Lavenhar filed a notice with the court that he joins in Ms. Lavenhar's reply brief in 13-cv-02160.

### B.     First American's Appeal

"Under Colorado law, a creditor who obtains a judgment may enforce it against the real property of the debtor." *Clark v. Peters* (*In re Bryan*), 547 F. App'x 892, 895 (10th Cir. 2013) (unpublished). Colorado law provides that "[a]ll . . . real estate of every person against whom any judgment is obtained in any court of record in this state . . . [is] liable to be sold on execution to be issued upon such judgment":

> A transcript of the judgment record of such judgment, certified by the clerk of such court, may be recorded in any county; and from the time of recording such transcript, and not before, the judgment shall become a lien upon all the real estate, not exempt from execution in the county where such transcript of judgment is recorded, owned by such judgment debtor or which such judgment debtor may afterwards acquire in such county, until such lien expires.

Colo. Rev Stat. § 13-52-102.

First American seeks to enforce its judgment against the Property. It claims that Mr. Lavenhar is the "true owner" of the Property, although title is held in the name of the Lavenhar Trust. At the time that Mr. Lavenhar filed the bankruptcy petition, First American had recorded a transcript of judgment against him, had initiated (but not concluded) the action to set aside the allegedly fraudulent conveyance of the Property to the Lavenhar Trust, and had recorded a notice of *lis pendens*.

The filing of a Chapter 7 bankruptcy petition automatically stays, *inter alia*, "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the" bankruptcy, 11 U.S.C. § 362(a)(2), "any act to create, perfect, or enforce any lien against property of the estate," § 362(a)(4) and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," § 362(a)(3).

5

First American argues that the Bankruptcy Court erred in denying its motion, because its pursuit of the underlying action was not stayed, and if it was, First American was entitled to relief from the automatic stay.

### 1. Automatic Exception from the Bankruptcy Stay

Initially, First American contends that 11 U.S.C. §§ 362(b) and 546(b) did not stay its pursuit of the fraudulent conveyance action because pursuit of such action was in the nature or perfecting or maintaining a lien that existed prior to the bankruptcy filing. First American relies on language found in § 362(b)(3) and Section 546(b)(1). Section 362(b)(3) provides that the filing of a bankruptcy petition "does not operate as a stay . . . of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title." Section 546(b)(1) provides that a trustee's powers and rights are subject "to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection."

It is undisputed that at the time Mr. Lavenhar filed for bankruptcy protection, First American had recorded a transcript of judgment, had initiated a fraudulent conveyance action to recover Mr. Lavenhar's interest in the Property, and had recorded a *lis pendens*. The fundamental question is whether by virtue of these acts First American held a property or lien interest. To answer this question, the Court looks to Colorado law. *In re Miller*, 666 F.3d at 1262.

Under Colorado law, the recordation of a *lis pendens* does not create a lien or property interest. Although Colorado courts have recognized the "serious consequences flowing from the filing of a notice of lis pendens," *Kerns v. Kerns*, 53 P.3d 1157, 1164 n.6 (Colo. 2002), a lis

6

pendens "does not constitute a lien against real property," *Hewitt v. Rice*, 154 P.3d 408, 412 (Colo. 2007); *see also* Colo. Rev. Stat. § 38-35-110(1). "[N]o new interest is created by the existence of a lis pendens notice." *Kerns*, 53 P.3d at 1164 n.6 (quotation omitted).

Similarly, if a debtor has no record interest in particular real estate, a recorded transcript of judgment does not automatically create a lien upon property which a judgment debtor has allegedly fraudulently conveyed to a third party. Before the judgment lien can attach, the "creditor must successfully prosecute a fraudulent conveyance lawsuit." *Shepler v. Whalen*, 119 P.3d 1084, 1088 (Colo. 2005).[6] The critical language in *Shepler* is its reference to "prosecution" of the fraudulent conveyance lawsuit. The parties offer different interpretations of "prosecution". First American argues that it means initiation of the lawsuit; the Trustee argues that it means conclusion of the lawsuit. Neither offer, nor has the Court found Colorado precedent squarely on point, but the reasoning of the United States Court of Appeals for Tenth Circuit in *Clark v. Peters* (*In re Bryan*), 547 F. App'x 892, 895 (10th Cir. 2013) (unpublished), is instructive.

In *Bryan*, the court rejected the argument that a judgment lien attached to "any unrecorded equitable interest" of a debtor in property titled in the name of a trust. *In re Bryan*, 547 F. App'x at 895-96. In doing so, the Tenth Circuit highlighted the Colorado Supreme Court's holding in *Shepler* that transfers made with the intent to defraud creditors are voidable, not void *ab initio*. *See id.* at 897-98; *see also Shepler*, 119 P.3d at 1088. The distinction is important. A transfer is effective until voided; thus there can be no interest of a debtor in

---

[6] First American contends that it created a lien by filing the notice of lis pendens and its complaint after recording the transcript of judgment. It relies, however, on decisions that pre-date the Colorado Supreme Court's en banc decision in *Shepler*. When this Court applies the substantive laws of a state, it "must apply the most recent statement of state law by the state's highest court." *New York Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 409 (10th Cir. 1996).

property to which a lien can attach until the transfer is voided. This suggests that "prosecution" of a fraudulent conveyance claim requires completion of the lawsuit – hence, the phrase "successful prosecution." Because First American had not completed its prosecution, at the time of Mr. Lavenhar's bankruptcy filing it had no lien. First American was simply an unsecured creditor, and prosecution of the fraudulent conveyance action was subject to the automatic stay.

### 2. Relief from the Bankruptcy Stay

In the alternative, First American asserts that it was entitled to relief from the bankruptcy stay pursuant to 11 U.S.C. § 362(d)(1) or (2). Section § 362(d) provides, in relevant part, that relief from the stay shall be granted:

> **(1)** for cause, including the lack of adequate protection of an interest in property of such party in interest;
> **(2)** with respect to a stay of an act against property under subsection (a) of this section, if—
>     **(A)** the debtor does not have an equity in such property; and
>     **(B)** such property is not necessary to an effective reorganization[.]

First American argues that relief is appropriate under subsection (2) because the value of the property is less than Mr. Lavenhar's debt to First American and the property is not required for any reorganization. Additionally, First American contends that the factors discussed in *Wilson v. Unioil* (*In re Unioil*), 54 B.R. 192 (Bankr. D. Colo. 1985), support a holding that there is "cause" under subsection (1).

First American, however, concedes in its opening brief on appeal that *Delgado Oil Co. v. Torres*, 785 F.2d 857 (10th Cir. 1986), "has been interpreted by the Tenth Circuit to hold that only the Trustee has standing to bring a fraudulent transfer action" after a bankruptcy case has been filed. First American attempts to distinguish the case law with regard to its arguments under 11 U.S.C. §§ 362(b) and 546, but makes no such argument with regards to § 362(d). Although this Court recognizes that "standing" is likely no longer the proper terminology, *see*

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386-87 & n.4 (2014), the Tenth Circuit's interpretation of the relevant statutes is controlling. In *Citicorp Acceptance Co. v. Robison* (*In re Sweetwater*), 884 F.2d 1323 (10th Cir. 1989), the Tenth Circuit iterated that "once a bankruptcy petition is filed, preference actions must be pursued in the bankruptcy proceeding, not outside it, and . . . the power to pursue them is given by the Code <u>to the trustee, as opposed to a single creditor</u>." *Id.* at 1328 (emphasis added). Such a conclusion, the Tenth Circuit noted, "reaffirm[s] the principle that post-petition avoidance actions should be pursued in a manner that will satisfy the basic bankruptcy purpose of treating all similarly situated creditors alike; one or more similarly situated creditors should not be able to pursue an avoidance action for their exclusive benefit." *Id.* Under Tenth Circuit precedent, therefore, First American lacked the statutory "power" to pursue its fraudulent transfer claim. The Bankruptcy Court did not abuse its discretion in denying First American's motion.

### C. Ms. Lavenhar's Appeal

Ms. Lavenhar contends the bankruptcy court erred by granting First American relief from the stay to pursue resolution of whether fraud was committed upon the state court in the Lavenhars' divorce proceedings. Her argument, however, is a narrow one – she only challenges the relief from stay granted First American to the extent that it was authorization to seek a determination that the transfer of the Property was a fraudulent conveyance. Such claim, she correctly asserts, is reserved to the trustee.[7]

---

[7] Ms. Lavenhar uses the term "standing," which, again, is likely no longer appropriate pursuant to the Supreme Court's decision in *Lexmark International*. *See* 134 S. Ct. at 1386-87. Ms. Lavenhar does not appear to challenge the requisite Article III standing. Nonetheless, "[a] federal court must in every case, and at every stage of the proceeding, satisfy itself as to its own jurisdiction, and the court is not bound by the acts or pleadings of the parties." *Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1301 (10th Cir. 1980). To demonstrate the "irreducible constitutional minimum of standing," the

Ms. Lavenhar contends that although the Bankruptcy Court's order granting relief from stay was limited to seeking to prove that there had been a fraud on the court in the divorce action, the effect of the order is to allow First American to pursue a fraudulent conveyance action, which, as noted above, can only be pursued by the trustee. *See In re Sweetwater*, 884 F.2d at 1328. The Bankruptcy Court's order, however, is narrowly tailored, allowing relief from the stay only "to resolve the sole issue of whether fraud was committed upon" the state court[8], and mandating that "no adjudication of property issues may occur until after" the Bankruptcy Court has determined "all issues concerning the property of the Estate." Moreover, the Bankruptcy Court granted relief from the stay after the trustee's counsel represented that the trustee would "certainly intervene if there's any indication that First American is attempting to backdoor the Court's earlier ruling that the fraudulent-transfer actions belong to the Estate."

Within those narrow constraints, the Court agrees with the Bankruptcy Court. Pursuant to the order of the Bankruptcy Court, and with the support and observation of the trustee, First American may pursue the sole issue of whether fraud was perpetrated on the state court.[9] The

---

Supreme Court has explained that "[t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc.*, 134 S. Ct. at 1386.

   Clearly, Ms. Lavenhar is a creditor with an interest in the administration of the bankruptcy estate. In Schedule E to his Statement of Financial Affairs, however, Mr. Lavenhar scheduled Ms. Lavenhar as holding a domestic support claim of $464,300. Ms. Lavenhar subsequently filed a Proof of Claim in the amount of $347,400 with priority status. The Court has some question that she has an interest separate from that of the Bankruptcy Trustee, but for purposes of this appeal, the Court will assume that she does.

[8]   The Court notes that Colorado Court of Appeals allowed a third-party intervention in a marriage dissolution case several years after the dissolution occurred. *See In re Marriage of Paul*, 978 P.2d 136, 140 (Colo. Ct. App. 1998).

[9]   Some courts have suggested sham divorces can be disregarded under bankruptcy law. *See, e.g.*, *Brown v. Continental Airlines, Inc.*, 647 F.3d 221, 227 (5th Cir. 2011). Nonetheless,

Tenth Circuit has discussed its *Delgado Oil* precedent in terms of ensuring that similarly situated bankruptcy creditors are treated alike. *See In re Sweetwater*, 884 F.2d at 1328. Confined by the Bankruptcy Court's order, relief from the stay for First American does not directly impact the disposition of assets, and does not establish a superior position for First American with regard to other creditors. At most, it results in a benefit to all creditors.

### IV.   Conclusion

Once more, this Court's review is narrow, given the scope of the appeal. The Court expresses no opinion regarding the sole issue to be resolved pursuant to the relief from the stay. "[I]t is well-established that an order granting stay relief is not a final adjudication of the parties' various rights and interests in the subject property." *Thomas v. Fed. Nat'l Mortg. Assoc.* (*In re Thomas*), 469 B.R. 915, 922 (B.A.P. 10th Cir. 2012) (quotation omitted). The Bankruptcy Court did not abuse its discretion in determination of either request for relief from the stay. The Bankruptcy Court's Orders at issue in case numbers 13-cv-00499 and 13-cv-02160 are **AFFIRMED**. The Clerk of the Court is directed to close these cases.

Dated this 25th day of August, 2014.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge

---

the Court agrees that it is often "appropriate for bankruptcy courts to avoid incursions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters." *In re Dryja*, 425 B.R. 608, 611 (Bankr. D. Colo. 2010) (quotation omitted).